```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

HERMAN KAM,

                              Plaintiff,                21-CV-07138 (SN)

              -against-                                 OPINION AND ORDER

ARAMARK AMERICAN FOOD SERVICES, INC.,

                              Defendant.
-----------------------------------------------------------------X
```

**SARAH NETBURN, United States Magistrate Judge:**

Herman Kam ("Plaintiff"), proceeding *pro se*, sues his former employer Aramark American Food Services, Inc. ("Defendant") alleging discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and New York State Human Rights Law ("NYSHRL"). Defendant has moved for summary judgment. ECF No. 50. The motion is GRANTED.

BACKGROUND

**I.     Factual Background**

Plaintiff is an approximately 65-year-old Chinese man. ECF No. 1 ¶ 7. He was hired by Defendant, a food-service company, in May 2017 to work as a catering waiter supporting one of Defendant's clients. ECF No. 52, Defendant's Rule 56.1 Statement ("Def. 56.1") ¶ 1.[1]

Plaintiff was initially assigned to a position on the 3rd floor of the client's building. Def. 56.1 ¶ 4. Following complaints from a co-worker and employees of another company, he was reassigned to the 42nd and 43rd floors. Def. 56.1 ¶ 4-5. Following his reassignment, multiple temp

---

[1] As discussed *infra*, Plaintiff has failed to respond to Defendant's 56.1 statement and therefore the facts therein are undisputed. Accordingly, they serve as the basis for this summary.

employees had negative experiences with Plaintiff and refused to work with him again. Def. 56.1 ¶ 6. From July 2020 through his termination on June 10, 2021, Plaintiff engaged in a variety of disruptive behaviors and "aggressive emotional exchanges with management and fellow employees." Def. 56.1 ¶ 19. These included: sending inappropriate text messages to coworkers, "yelling and screaming" at a coworker, recording conversations and meetings without the consent of his coworkers, alluding to bringing a firearm to work, harassing coworkers, and making inappropriate comments. Def. 56.1 ¶¶ 7, 9, 12, 15, 27, 28. Plaintiff's supervisor reported that he was difficult to manage, and that attempts to do so were often met with accusations of harassment. Def. 56.1 ¶ 29.

Following Plaintiff's comments about bringing a firearm to work, he was disciplined in writing. Def. 56.1 ¶ 19. Later that same day, Plaintiff complained to Defendant's human resources department that he was being harassed by his coworkers. Def. 56.1 ¶ 20. In response, Defendant conducted an internal investigation of Plaintiff's complaints—which included speaking to Plaintiff, his coworkers, and his supervisors—but ultimately found them to be unsubstantiated. Def. 56.1 ¶¶ 21-22.

The investigation did, however, document multiple instances of inappropriate behavior by Plaintiff. Def. 56.1 ¶ 23. These included using a racial epithet while screaming at a co-worker and circulating to his colleagues a photo of a naked baby superimposed with that same co-worker's face. Id. Another of Plaintiff's colleagues believed that the original photo was of his own nephew and texted Plaintiff saying, "This is the last time you joke around with a member of my family." Def. 56.1 ¶ 8; see also id. ¶ 32 ("[Plaintiff] crossed a line by using one of my family members' pictures, a minor, to make a joke on a job group chat.").

Following the investigation, another co-worker submitted a human resources complaint claiming that Plaintiff "does not leave her alone" and "stalks her." Def. 56.1 ¶ 27. Plaintiff's strained relationship with his coworkers and management culminated in a letter signed by 12 other employees addressed to their union leadership (a union to which Plaintiff also belonged) complaining of Plaintiff's "unsettling behavior" and requesting "immediate action." Def. 56.1 ¶¶ 30-31. The letter stated that the employees had been "victimized by [Plaintiff's] aggressive, delusional and most recently dangerous behavior" and expressed a concern that Plaintiff would become violent. Def. 56.1 ¶ 31. Multiple employees submitted individual letters to the union as well, two of which expressed that Plaintiff's behavior had made them fear for their lives. Def. 56.1 ¶ 32. Another said, "I have been working for Goldman Sachs for 24 years and never in my life have I experienced this type of behavior with anyone here." Id.

On June 1, 2021, Defendant gave Plaintiff a "Final Written Documentation," which warned him that failure to "maintain professional work behavior at all times" would result in termination. Def. 56.1 ¶¶ 37-38. Despite this warning, Plaintiff continued to have confrontations with coworkers. Def. 56.1 ¶¶ 40-44. One wrote to Defendant that "[m]y coworkers and I do not deserve to be the seemingly constant victims of what he says or does and keeps getting away with. . . . We all deserve to come to a workplace where we don't have to fear for our very survival. Enough is enough." Def. 56.1 ¶ 45. On June 9, 2021, Defendant terminated Plaintiff's employment effective the following day. Def. 56.1 ¶ 46.

## II.  Procedural Background

Plaintiff filed this action, through counsel,[2] on August 24, 2021. See ECF No. 1. His complaint alleged that while employed by Defendant he was "subjected to ongoing and

---

[2] On May 16, 2023, the Court granted Plaintiff's counsel's motion to withdraw, and Plaintiff has since proceeded *pro se*.

continuous race, national origin, age, and religious-based hostility," which Defendant "did nothing to remedy thus rendering the working conditions for Plaintiff . . . deplorably hostile." Id. ¶ 14. The complaint further alleged that Plaintiff "was harassed by both managers and coworkers on an almost daily basis . . . ." Id. ¶ 15.

The parties consented to my jurisdiction on November 7, 2022. On May 4, 2023, following a conference with the parties, the Court issued a scheduling order requiring Defendant's motion for summary judgment to be filed no later than June 2, 2023, with Plaintiff's opposition due July 7, 2023. See ECF No. 46. In that same order, the Court granted Defendant's motion for discovery sanctions—which was filed after Plaintiff was granted multiple opportunities to produce responsive discovery—and ordered, *inter alia*, that Plaintiff was "precluded from relying on or using in any way any document produced after March 23, 2023." ECF No. 46.

Defendant's motion for summary judgment was timely filed, but Plaintiff failed to file any opposition, and on July 31, 2023, the Court *sua sponte* granted him a two-week extension. See ECF No. 57. On August 7, 2023, Plaintiff filed a three-page letter re-iterating allegations from his complaint but failing to meaningfully respond to Defendant's motion. See ECF No. 58. Plaintiff has also failed to respond to Defendant's Rule 56.1 Statement. Defendant's reply was filed August 28, 2023.

A "nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009); see also Local Rules 56.1(b)-(c); Fed. R. Civ. P. 56(c), (e). "In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." T.Y.,

584 F.3d at 418. Thus, for purposes of this motion, the facts contained in Defendant's 56.1 statement are uncontested and admissible.

## DISCUSSION

### I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing that no genuine issue of material fact exists. Id. at 256-57; see Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "If the moving party puts forth such a showing, the party opposing the entry of summary judgment must then present 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Charley v. Total Off. Plan. Servs., Inc., 202 F. Supp. 3d 424, 428 (S.D.N.Y. 2016) (quoting Anderson, 477 U.S. at 249). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citing Celotex, 477 U.S. at 322-23).

To defeat summary judgment, the non-moving party must produce more than a "scintilla of evidence," Anderson, 477 U.S. at 252, and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); Flores v. United States, 885 F.3d 119, 122 (2d Cir. 2018) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." (quoting Kulak v. City of New York, 88 F.3d 63, 71

(2d Cir. 1996))). The non-moving party "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks omitted).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." Id. (internal quotation marks omitted).

In ruling on a motion for summary judgment, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

## II. Discrimination

### A. Legal Standard

"Title VII, § 1981, and NYSHRL discrimination claims are governed at the summary judgment stage by the burden-shifting analysis first established in McDonnell Douglas Corp. v. Green . . . ." Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015). Under that framework, a plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that they (1) belong to a protected class, (2) were qualified for the position they held, (3) suffered an adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discriminatory intent. Id. at 435.

"Circumstances giving rise to an inference of discriminatory intent "may include . . . the employer's criticism of the plaintiff's performance in ethnically degrading terms, or its invidious

6

comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group, or the sequence of events leading to the plaintiff's discharge, or the timing of the discharge." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994). Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant who must demonstrate "through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." Id. at 38 (internal quotation marks omitted, italics in original). Once a defendant has articulated nondiscriminatory reasons for an employment action, the burden once again returns to the plaintiff "to show that the reason was merely a pretext for discrimination." Id. "Pretext may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case . . . ." Id. (internal citations and quotation marks omitted).

### B.  Analysis

Plaintiff has failed to establish a *prima facie* case of discrimination. He has not responded to Defendant's 56.1 statement and his letter opposing summary judgment merely reiterates allegations from the complaint that he was mistreated by his coworkers. See ECF No. 58. He has failed to "set forth specific facts demonstrating that there is a genuine issue for trial." Wright, 554 F.3d at 266. (2d Cir. 2009) (internal quotation marks omitted). At his deposition, Plaintiff was unable to substantiate or even affirm his own claims. See Def. 56.1 ¶ 49 ("[Plaintiff] repeatedly responded that coworkers allegedly called him 'stupid fucking China man' but admitted there are no witnesses who can corroborate that alleged statement[], instead claiming that it is captured in unspecified audio recordings and text messages with coworkers."), id. ¶ 50

("Plaintiff also testified at his deposition that he does not even know if the allegations contained in the Complaint are truthful and accurate.").

Accordingly, it would be impossible for the the Court to conclude, on the record at summary judgment, that the circumstances preceding and surrounding Plaintiff's termination give rise to an inference of discriminatory intent.

Assuming, *in arguendo*, that Plaintiff had demonstrated a *prima facie* case of discrimination, Defendant has thoroughly carried its burden by producing evidence showing that Plaintiff's erratic and troubling behavior was the cause of his termination, and not unlawful discrimination. See Chambers, 43 F.3d at 38. Plaintiff would then bear the burden of producing "additional evidence showing that the employer's proffered explanation is unworthy of credence," id., but he has not done so. In fact, Plaintiff has offered no evidence regarding his job performance at all.

Defendant has demonstrated an "absence of evidence to support an essential element of the nonmoving party's claim." Goenaga, 51 F.3d at 18. Accordingly, it is entitled to summary judgment on Plaintiff's discrimination claims.

### III. Retaliation

#### A. Legal Standard

To establish a retaliation claim "a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Littlejohn v. City of New York, 795 F.3d 297, 316 (2d Cir. 2015) (internal quotation marks omitted).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Wright v. Monroe Cmty. Hosp., 493 F. App'x 233, 236 (2d Cir.

2012). "Such activity can be either formal, such as the filing of formal discrimination charges, or informal, such as 'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.'" Champion v. New York State Off. of Parks, Recreation & Historic Pres., 500 F. Supp. 3d 26, 48 (S.D.N.Y. 2020) (quoting Matima v. Celli, 228 F.3d 68, 78-79 (2d Cir. 2000)). "To succeed on a retaliation claim, the plaintiff must at least have a good-faith, reasonable belief that she was opposing an unlawful employment practice." Leroy v. Delta Air Lines, No. 21-267-CV, 2022 WL 12144507, at *1 (2d Cir. Oct. 27, 2022). "A court must view the totality of the circumstances to make such a determination." Thomas v. Town of Southeast, 336 F. Supp. 3d 317, 327 (S.D.N.Y. 2018).

"If the plaintiff meets his initial burden, the employer is required to articulate a *bona fide* non-retaliatory reason for the adverse action that it took with respect to the plaintiff . . . the burden then returns to the plaintiff to prove that retaliation was a motivating factor in the employer's decision." Bazile v. City of New York, 215 F. Supp. 2d 354, 383 (S.D.N.Y. 2002).

**B.     Analysis**

The complaint filed by Plaintiff's then-counsel alleged that, beginning in 2018, he "was harassed by both managers and coworkers on an almost daily basis" because of his race, national origin, age, and religion. In particular, Plaintiff alleged that he was subjected to a host of harassment and threats centering around COVID-19, ostensibly because he visited Indonesia and China in early 2020. Plaintiff further alleged that his coworkers were instructed not to speak to him, and that he was instructed not to speak to his coworkers. Plaintiff alleged that, after lodging multiple complaints to his supervisor and human resources, he was terminated in retaliation for those complaints, "solely because of his race and national origin and because of his complaints of race-based discrimination."

Other than the allegations contained in the complaint, and those that were reiterated in the letter Plaintiff filed in response to Defendant's motion for summary judgment, Plaintiff has done almost nothing to prosecute this case. He refused to cooperate at the discovery phase, has failed to meaningfully respond to Defendant's motion, and has not responded at all to its 56.1 statement. Thus, Plaintiff has failed to support or explain this claim with even a single citation to the record, as is required at the summary judgment phase. Plaintiff has therefore failed to establish a *prima facie* case of retaliation.

Even had Plaintiff done so, as discussed above, Defendant has demonstrated *bona fide* non-retaliatory reasons for Plaintiff's termination. See Bazile, 215 F. Supp. 2d at 383.

Plaintiff has put forward no evidence from which a reasonable jury could conclude that he was subjected to illegal retaliation. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

## CONCLUSION

Plaintiff has failed to establish a *prima facie* case for any of his causes of action and has not shown that any dispute of material fact exists here. As movant against the party who will bear the ultimate burden at trial, Defendant has carried its burden at summary judgment by pointing to an absence of evidence to support Plaintiff's claims. Accordingly, Defendant's motion for summary judgment is GRANTED in full. The Clerk of Court is respectfully directed to terminate the gavel at ECF No. 50 and close this case.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   September 14, 2023
         New York, New York